# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

ANTHONY VEGA, JR.,

    Petitioner,

v.

J.V. FLOURNOY,

    Respondent.

CIVIL ACTION NO.: 2:17-cv-113

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Anthony Vega ("Vega"), who is currently incarcerated at FCC Forrest City Medium in Forrest City, Arkansas, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus while he was housed at the Federal Correctional Institution in Jesup, Georgia. Doc. 1. Respondent filed a Response, and Vega filed a Traverse. Docs. 7, 8. For the reasons which follow, I **RECOMMEND** the Court **DENY** Vega's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Vega *in forma pauperis* status on appeal.

## BACKGROUND

Vega was arrested and charged in the State of Michigan with violation of probation in May 2010. Doc. 1-1 at 2. Vega was later indicted on federal charges for conspiracy to distribute and possession with intent to distribute cocaine. On November 24, 2010, a writ of habeas corpus *ad prosequendum* was issued. Id. Vega was arraigned on the federal charges on December 8, 2010 and was sentenced on these charges on February 7, 2012 to 151 months' imprisonment. Id.

Vega was remanded back to the State of Michigan on February 18, 2012. Id. at 3. His projected release date is February 5, 2023, via good conduct time credit. Doc. 1-2 at 1.

## DISCUSSION

In his Petition, Vega states that, on July 27, 2010, he was sentenced in the Sixth Circuit Court of Pontiac (Michigan) to 21 months' to 15 years' imprisonment for count 1 and to 18 months' to 3 years' imprisonment for violations of probation in case numbers 08-218861-FH and 08-221303-FH . Doc. 1-1 at 3. On December 6, 2010, Vega was taken into federal custody, and on December 8, 2010, Vega was arraigned in federal court after the issuance of a writ of habeas corpus *ad prosequendum*. Id. at 2. Vega was sentenced in federal court on February 7, 2012 and was remanded back to the State of Michigan on February 18, 2012. Id. at 3. Vega asserts he has not received credit against his federal sentence for the time he spent in federal custody from December 6, 2010 through February 7, 2012. Id. at 2, 6. It is this time for which Vega seeks credit against his federal sentence.

Respondent asserts Vega's sentence has been properly calculated, and he is not entitled to any credit against his federal sentence. Doc. 7.

**I.  Whether Vega is Entitled to Credit Against his Sentence**

It is the duty of the United States Attorney General, acting through the Bureau of Prisons ("BOP"), to determine the amount of credit due for the time served by the defendant "for any time he has spent in official detention prior to the date the sentence commences." United States v. Alexander, 609 F.3d 1250, 1259 (11th Cir. 2010). "A federal district court reviews for abuse of discretion the BOP's decision under [18 U.S.C.] § 3585 regarding commencement of a federal sentence and the grant of credit for prior custody." Paradis v. Keller, No. 1:10-CV-2354, 2011 WL 2790480, at *4 (N.D. Ga. June 13, 2011), *report and recommendation adopted*, 2011 WL

2790472 (N.D. Ga. July 14, 2011). To determine whether the BOP properly calculated Vega's sentence, the Court must begin with the plain language of the statute itself. Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) ("We begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision."). Section 3585 of Title 18 of the United States Code, which pertains to "credit for prior custody," is controlling for making credit determinations for sentences imposed under the Sentencing Reform Act of 1984. This statute provides:

> (a) Commencement of sentence. A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit of Prior Custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585 (emphasis added).

As relevant here, Michigan state authorities arrested Vega on May 15, 2010 for a probation violation. Doc. 7 at 2. On June 28, 2010, Vega was sentenced in a State of Michigan court in case number 09-225837-FH to 90 days' confinement and received credit for presentence custody for 44 days (May 15 to June 27, 2010). Id. Vega was also sentenced on July 26, 2010 in a State of Michigan court in case numbers 08-218861-FH and 08-221303-FH to a 2- to 15-year

3

total term and received 282 days' credit, including 72 days' credit for presentence custody (May 15 through July 25, 2010). Id.

Vega was transferred to secondary federal custody on December 6, 2010 via a writ of habeas corpus *ad prosequendum* to answer charges of conspiracy to distribute and possession with intent to distribute cocaine.[1] Id. The District Court for the Eastern District of Michigan sentenced Vega on February 7, 2012 to 151 months' imprisonment with the recommendation that his federal sentence run concurrently with Vega's undischarged state sentences. Id.; Doc. 7-1 at 12, 13. Sometime later in February 2012, Vega was returned to Michigan state authorities upon satisfaction of the federal writ.[2] The State of Michigan paroled Vega, and he was transferred to exclusive federal custody on April 27, 2012. Doc. 7 at 2; see Doc. 7-1 at 18. Vega contends that he should receive credit for time served for December 6, 2010 to February 7, 2012 (the date he was transferred to secondary federal custody until the date he was sentenced by the federal court). Id. at 2, 6.

In determining whether credit should be given for prior custody, a two-part analysis is helpful. First, it must be determined when the sentence commenced. A sentence "'cannot begin prior to the date it is pronounced, even if made concurrent with a sentence already being served.'" Coloma v. Holder, 445 F.3d 1282, 1284 (11th Cir. 2006) (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). Here, it is undisputed that Vega's federal sentence commenced on February 7, 2012, the date his 151-month federal sentence was imposed. Doc. 7-

---

[1] Vega was unquestionably in state custody until December 6, 2010.

[2] There is some inconsistency about the date Vega was transferred back to state authorities. Vega states he was transferred back "on or about February 18th, 2012," doc. 1-1 at 3, but Respondent states Vega was transferred back to state authorities on "February 27, 2012," doc. 7 at 2. The distinction is immaterial, as Vega only seeks credit until February 7, 2012.

1 at 3, 4, 9. Respondent committed no error in determining the commencement date of Vega's sentence.[3]

Vega, however, maintains that he should be credited for time spent in federal custody before his sentence was imposed. As an initial matter, Vega's transfer to federal custody via a writ of habeas corpus *ad prosequendum* would not automatically require a credit. See BOP Program Statement 5880.28 ("Time spent in custody under a writ of habeas corpus from non-federal custody will not in and of itself be considered for the purpose of crediting presentence time."). Vega would need to show that he is entitled to credit under § 3585(b)(1). As that provision makes clear, Vega is not entitled to any credit for prior custody if that time was "credited against another sentence." Here, Vega does not show he is entitled to credit under § 3585(b)(1). Instead, Vega was still serving his state sentences in case numbers 08-218861-FH and 08-221303, and it appears his time in custody from December 6, 2010 to February 7, 2012 was credited against his state sentences. Doc. 7-1 at 3–4 (noting federal statute and BOP policy preclude crediting any time a federal inmate spent in the primary custody of state authorities, which, in this case was from December 6, 2010 through February 7, 2012). Vega is not entitled to any credit against his federal sentence for this period of custody.

---

[3] It does not appear that Vega challenges Respondent's conclusion that his federal sentence commenced on February 7, 2012. Rather, Vega argues that he should get credit for time he served in secondary federal custody before his federal sentence commenced. To be clear, any argument that Vega's sentence commenced when he was transferred to secondary federal custody would fail. See Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir. 1980) (A writ of habeas corpus *ad prosequendum* is "only a loan of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction."); see also Powell v. Jordan, 159 F. App'x 97, 99–100 (11th Cir. 2005) ("'[I]if a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody at the completion of the federal proceedings or the federal sentence if the federal government wishes to execute it immediately.'") (citation omitted).

5

The fact that the sentencing judge in Vega's federal case directed that Vega's federal sentence would run concurrently with the state court sentences does not change the analysis. There is nothing before the Court that indicates that the federal sentencing judge intended for Vega's sentence to start running prior to the date it was entered (February 7, 2012) such that Vega would get the credit for time in custody before sentencing. Rather, the federal sentencing judge only recommended Vega's federal sentence run concurrently with his Michigan state sentences. Doc. 7-1 at 13.

For these reasons, Vega is not entitled to any additional credit against his federal sentence under § 3585. Consequently, the Court should **DENY** Vega's Petition.

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Vega leave to appeal *in forma pauperis*. Though Vega has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka,

314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Vega's Petition and the responsive pleadings, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Vega's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Vega leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Vega and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of July, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA